514 A.2d 582

**Joseph McCABE**

v.

**PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY and Travelers Insurance Company.**

**Appeal of PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued March 13, 1986.

Filed Aug. 25, 1986.

---

*Farm Mutual Ins. Co.*, 496 Pa. 215, 219 n. 10, 436 A.2d 621, 623 n. 10 (1981).

David M. McCormick, Philadelphia, for appellant.

Eugene F. Jarrell, III, Media, for McCabe, appellee.

Charles Craven, Philadelphia, for Travelers, appellee.

Before WICKERSHAM, WIEAND and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal by appellant, Prudential Property and Casualty Insurance Company (hereinafter referred to as Prudential), from an order entered in the Delaware County Court of Common Pleas granting, inter alia, Travelers In-

surance Company's (hereinafter referred to as Travelers) motion for summary judgment against Prudential for indemnity, for any and all amounts paid by Travelers to Joseph McCabe in satisfaction of his claims for Pennsylvania No-Fault Motor Vehicle Insurance Benefits.

On or about May 14, 1981, while walking across a portion of Interstate 95 located in Pennsylvania, Joseph McCabe was struck by an automobile owned and operated by Kevin Frissora. Mr. Frissora was a Connecticut resident and his automobile was insured by Prudential under a policy written in accordance with the Connecticut No-Fault Motor Vehicle Statute. Mr. McCabe had no insurance of his own, and, therefore, applied to the Pennsylvania Assigned Claims Plan for no-fault benefits. The Pennsylvania Assigned Claims Plan assigned his claim to Travelers. Travelers denied Mr. McCabe's claim, and, in turn, Mr. McCabe instituted this action against both Prudential and Travelers in order to recover under the Pennsylvania No-Fault Motor Vehicle Insurance Act. The parties filed motions for summary judgment.

Summary judgment was granted in favor of Joseph McCabe and against Travelers for no-fault benefits and attorney's fees. The lower court also granted Travelers' motion for summary judgment against Prudential for indemnity for any and all amounts paid by Travelers to Joseph McCabe in satisfaction of his claims for Pennsylvania No-Fault Motor Vehicle Insurance Benefits. This appeal followed.

Appellant raises three issues: (1) whether a pedestrian injured in Pennsylvania, when struck by a vehicle insured in Connecticut, may obtain "no-fault benefits" under that vehicle's policy when he is excluded from coverage by a policy provision written in compliance with Connecticut law; (2) whether the Pennsylvania No-Fault Act imposes liability for the payment of "no-fault benefits" to pedestrians injured in Pennsylvania, on a Connecticut policy of insurance which specifically excludes such coverage; and, (3) whether the denial of "no-fault benefits" under the Connecticut policy

was unreasonable and justified the imposition of attorney's fees against the appellant.

The Pennsylvania No-Fault Motor Vehicle Insurance Act (hereinafter referred to as Pennsylvania No-Fault Act, the Act of July 19, 1974; P.L. 489, No. 176, Act I, § 101, 40 P.S.A. § 1009.101, et seq.) requires that:

> Every owner of a motor vehicle ... operated in this Commonwealth by the owner ... shall continuously provide security covering such motor vehicle while such vehicle is either *present* or registered in the Commonwealth of Pennsylvania. Security shall be provided for the payment of basic loss benefits....

40 P.S.A. § 1009.104(a). (Emphasis added) *All owners* of a motor vehicle operated in Pennsylvania are required to provide such security. See, *Greathouse v. Federal Kemper Insurance Co.*, 13 D. & C.3d 785, 789 (1980).

Many states, including Connecticut, specifically require nonresident owners of motor vehicles to maintain that state's minimum level of no-fault security while that vehicle is operating within the state. Connecticut, Conn.Gen.Stat. Rev. § 38–327(a)(2); Florida, West's F.S.A. § 627.733(2); Colorado, C.R.S. (1973), 10–4–705.

Under section 1009.201(a) of the Pennsylvania No-Fault Act, appellant, Prudential, concedes that Joseph McCabe, an uninsured pedestrian who was injured when he was struck by a Connecticut insured automobile while it was being operated in Pennsylvania, is entitled to no-fault benefits. The Act provides that "if the accident resulting in injury occurs in this Commonwealth, *any* victim or *any* survivor of a deceased victim is entitled to receive basic loss benefits in accordance with the provisions of this act." (Emphasis added.) 40 P.S.A. § 1009.201(a).

As Prudential emphasizes in its brief, the real dispute concerns the *source* of those benefits. Section 204(a) of the Pennsylvania No-Fault Act deals with McCabe's source of benefits. Section 204(a), which is entitled "Source of Basic Restoration Benefits", provides:

(a) Applicable Security.—The security for the payment of basic loss benefits applicable to an injury to:

(1) An employee, or to the spouse or other relative of any employee residing in the same household as the employee, if the accident resulting in injury occurs while the victim or deceased victim is driving or occupying a motor vehicle furnished by such employee's employer, is the security for the payment of basic loss benefits covering such motor vehicle or, if none, any other security applicable to such victim;

(2) an insured is the security under which the victim or deceased victim is insured;

(3) the driver or other occupant of a motor vehicle involved in an accident resulting in injury who is not an insured is the security covering such a vehicle;

(4) an individual who is not an insured or the driver or other occupant of a motor vehicle involved in an accident resulting in injury is the security covering any motor vehicle involved in such accident. For purposes of this paragraph, a parked and unoccupied motor vehicle is not a motor vehicle involved in an accident, unless it was parked so as to cause an unreasonable risk of injury; and

(5) any other individual is the applicable assigned claims plan.

40 P.S.A. § 1009.204(a).

In *Tyler v. Insurance Co. of North America,* 311 Pa.Super. 25, 30, 457 A.2d 95, 97 (1983), the court ruled that, in order to determine the applicable source of basic loss benefits under Section 204's priority system, each preceding subsection must be excluded before the next subsection may be considered. The court further held that the security provided by the assigned claims plan is applicable only as a last resort.

In the instant case, the inapplicability of subsections (1), (2) and (3) can easily be established. At the time of the accident, Joseph McCabe, the basic loss benefits applicant, was not an employee in a vehicle provided by his employer. He was also not an insured under any policy of insurance or

an occupant of a motor vehicle involved in an accident resulting in injury.

It is Prudential's contention that subsection (4), "an individual who is not an insured or the driver or other occupant of a motor vehicle involved in an accident resulting in injury is the security covering any motor vehicle involved in such accident", does not apply in this case. 40 P.S.A. § 1009.-204(a). Prudential contends that the "security" which covers the Connecticut automobile involved in the accident excludes Joseph McCabe from coverage pursuant to a policy provision that was written in compliance with Connecticut law. We agree.

The Prudential policy, in compliance with Connecticut law, provides an "out-of-state" endorsement. The endorsement, PAC 243, provides:

> While you are in another state, territory or province of Canada, in which laws require non-residents to carry higher limits or other coverages than those provided by the policy, the limits and coverages of this policy will change to meet the requirements of those laws.

The out-of-state endorsement is written in compliance with Con.Gen.Stat.Rev. § 38–175b(b).

Section 38–175b(b) provides:

> (b) Every such policy issued, renewed, amended or endorsed on or after April 8, 1974 shall provide that if the provisions of the motor vehicle financial responsibility law or the motor vehicle compulsory insurance law or any similar law of any state, territory or possession of the United States of America or any province of Canada, require insurance with respect to the operation or use of the motor vehicle in such state, territory, or possession or province and such insurance requirements are greater than the insurance provided by the policy, the limits of the company's liability and the kinds of coverage afforded by the policy shall be as set forth in such law, in lieu of the insurance otherwise provided by the policy, but only to the extent required by such law and only with respect to the operation or use of the motor vehicle in such state,

territory, possession or province; provided the insurance under the subsection shall be reduced to the extent that there is other valid and collectible insurance under such policy or any other motor vehicle insurance policy. In no event shall any person be entitled to receive duplicate payments for the same element of loss.

Under Con.Gen.Stat.Rev. § 38–175b(b), the Connecticut legislature mandated that all no-fault policies issued in Connecticut shall provide expanded coverage to comply with the state's law in which the motor vehicle is operated. However, the problem lies in endorsement PAC–255 to Prudential's policy, which specifically excludes coverage for bodily injuries caused to pedestrians. This endorsement provides:

The company agrees with the named insured, subject to all of the provisions of this endorsement and to all of the provisions of the policy except as modified herein, as follows:

## Section 1

### Basic Reparations Benefits Coverage

The company will pay, to or for the benefit of each eligible injured person, or his dependent survivors, basic reparations benefits for economic loss as consisting of: (a) Liable expense, (b) work loss and (c) survivor's loss resulting from bodily injury, accidently caused and arising out of the ownership, maintenance or use, including loading or unloading, of a motor vehicle as a motor vehicle.

### Exclusions

The insurance under this endorsement does not apply ... (c) to bodily injury to any pedestrian, other than a basic reparations insured, if the accident occurs outside of Connecticut; ...

PAC–255 is written in compliance with Con.Gen.Stat.Rev. § 38–321 which provides:

(c) The insurer of the owner is not liable to pay such benefits [basic loss benefits] to a pedestrian other than a basic reparations insured if the accident occurs outside this state or to any person otherwise entitled to benefits if the accident occurs outside the United States of America in territories or possession of Canada.

The important question is which state's law applies when interpreting an insurance contract. In the instant case, Pennsylvania as the forum state looks first to its choice of law rule.

In the case of *Griffith v. United Airlines*, 416 Pa. 1, 203 A.2d 796 (1964), our Supreme Court laid to rest the *lex loci delecti* rule that existed in Pennsylvania for many years. Instead, the *Griffith* court held that the court must now apply the law of the state having the most significant contacts or relationships with the particular issue. In the case of *In Re Estate of Agostini*, 311 Pa.Super. 233, 252, 457 A.2d 861, 871 (1983), the court explained:

When doing this, it must be remembered that a mere counting of contacts is not what is involved. The weight of a particular state's contacts must be measured on a qualitative rather than quantitative scale. *Cipolla v. Shaposka*, 439 Pa. 563, 566, 267 A.2d 854, 856 (1970). When applied to the case at bar, this means we must determine which state—Pennsylvania or Florida—"has demonstrated, by reason of its policies and their connection and relevance to the matter in dispute, a priority of interest in the application of its rule of law." *McSwain v. McSwain*, 420 Pa. 86, 94, 215 A.2d 677, 682 (1966).

The *Griffith* case dealt with choice of law problems arising in tort actions. However, in *Nationwide Mutual Insurance Co. v. Walter*, 290 Pa.Super. 129, 137, 434 A.2d 164, 167–68 (1981), this court ruled that interest analysis could be applied to a contract action to determine the coverage of an automobile liability insurance policy. Accord *Caputo v. Allstate Ins. Co.*, 344 Pa.Super. 1, 6–9, 495 A.2d 959, 961–63 (1985).

As in the case at bar, the problem in *Walter* centered around an exclusionary clause found in a policy of insurance, i.e. excluding garagemen from coverage. The interest analysis in *Walter* is very similar to the instant case, and, therefore, we include it in our review.

The court in *Walter* held:

In this contract case, the state having the most vital contacts with the policy of insurance involved was New Jersey. The policy was issued in New Jersey by the appellant in June, 1972, to Mr. Walter, a resident of New Jersey. It was issued for the twofold purpose of giving insurance protection to Mr. Walter and others as set forth in the policy, and to comply with the requirements set forth in the New Jersey Motor Vehicle Security Responsibility Statute, *supra.* No matter where Mr. Fetter drove his car or gave consent to others to operate his vehicle, he had the right to expect that his policy conformed to New Jersey law and that the laws of New Jersey would apply in interpreting the policy. Pennsylvania had no contact with the transaction involving the insurance policy. It was by mere happenstance that the automobile was involved in an accident while located in Pennsylvania. As noted in *Griffith v. United Airlines, Inc.*, 416 Pa. 24, 203 A.2d 806: "[T]he site of the accident purely fortuitous."

..... Appellant argues that Pennsylvania had the most significant contacts as the car was located in Pennsylvania when the accident occurred having been previously delivered to Bucks County Imports by Mr. Walter, the accident occurred in Pennsylvania, and both occupants of the car at the time of the accident were Pennsylvania residents. Appellant overlooks the fact that these points of contact with Pennsylvania pertained to the alleged tort involved. We are concerned with the contract of insurance and as to the insurance policy New Jersey had the most significant contacts. The appellant issued an insurance policy to a New Jersey resident to cover an automobile located in New Jersey. The policy itself stated that any terms of the policy that are in conflict with the

statutes of the state in which the policy is issued were amended to conform to the state statute. Finally, the purpose of Mr. Walter in obtaining the policy was, at least partially, to comply with the laws of New Jersey. *Nationwide Mutual Insurance Co. v. Walter, supra*, 290 Pa.Super. at 136–138, 434 A.2d at 167–68.

In the instant case, Prudential argues that Connecticut law would apply since Kevin Frissora lived in Connecticut, and the Prudential policy of Insurance was executed there. It also contends that "underlying these contacts are Connecticut's sovereign interests that the rights of its residents and those who do business in its state are governed by Connecticut law and that its insurance law, as applied to the insurance policy, will be given full faith and credit by a sister state." Finally, Prudential alleges that Connecticut has an interest in minimizing insurance premiums for its residents. (Appellant's Brief, p. 14).

Appellees argue that Pennsylvania law would apply as well. The victim is a resident of Pennsylvania, and the accident occurred there. Both Prudential and Travelers are licensed to do business in Pennsylvania.

■ However, in this case, Pennsylvania had no contact with the transaction involving the insurance policy. It was by mere happenstance that the Connecticut automobile owned and operated by Kevin Frissora was involved in an accident while located in Pennsylvania. Appellees overlook the fact that the points of contact with Pennsylvania which they list pertain to the alleged tort involved. At this time, we are concerned with contract of insurance, and, as to the insurance policy, Connecticut had the most significant contacts. *Nationwide Mutual Insurance Co. v. Walter, supra*, 290 Pa.Superior Ct. at 138, 434 A.2d at 168.

In *Votedian v. General Accident Fire and Life Assurance Corporation*, 330 Pa.Super. 13, 16–17, 478 A.2d 1324, 1326 (1984), the court held that the language of a policy of insurance is clear and unambiguous, unless the provision violates public policy, a court is not justified in deviating

from the plain language of the policy except in rare instances. When the court undertakes to interpret a policy of insurance, as in interpreting other contracts, its goal is "to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Id.*, 330 Pa.Superior Ct. at 16, 478 A.2d at 1326. Quoting *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983).

■ Appellees reason that the statutory provisions of the Connecticut No-Fault Act, together with the plain and ordinary meaning of the language of the out-of-state endorsement in Prudential's policy of insurance, indicate that Kevin Frissora's coverage is increased to the level of coverage required by the Pennsylvania No-Fault Act. However, the plain language contained in the "out-of-state pedestrian exclusion" clearly shows that Joseph McCabe, as an out-of-state pedestrian, is not entitled to no-fault benefits under the policy of insurance issued by Prudential in compliance with the Connecticut No-Fault Act. These provisions are complimentary and not conflicting. This court will not read into the Prudential policy of insurance an ambiguity which does not exist. *Votedian v. General Accident Fire and Life Assurance Corporation, supra,* 330 Pa.Superior Ct. at 20, 478 A.2d at 1328.

Therefore, we vacate the lower court order requiring Prudential to indemnify Travelers for any and all amounts paid by Travelers to Joseph McCabe in satisfaction of Mr. McCabe's claim. However, Mr. McCabe is not without recourse since he is still eligible for Pennsylvania No-Fault Benefits under Section 204(a)(5) of the Pennsylvania No-Fault Act, dealing with applicable assigned claims plan. 40 P.S.A. § 1009.204(a)(5).

In view of our disposition of the issues in this case, we do not need to address the remaining question concerning attorney's fees raised in this appeal.

Accordingly, the order of the Court of Common Pleas granting Travelers' motion for summary judgment against Prudential is vacated, and the case is remanded for disposition in accordance with this opinion.

Jurisdiction is relinquished.

WIEAND, J., concurs in the result.