495 A.2d 959

**John CAPUTO, Jr., Individually and as Administrator of the Estate of Shelly Lynn Caputo, Deceased, Appellant,**

v.

**ALLSTATE INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Oct. 11, 1984.

Filed July 5, 1985.

Michael Luber, Philadelphia, for appellant.
David H. McCartney, Philadelphia, for appellee.

Before ROWLEY, McEWEN and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from the July 7, 1983 order denying appellant's petition to set aside, vacate or modify an arbitration award and confirming the arbitration award.[1]

The legal issue in this case is whether a Pennsylvania resident injured in a motor vehicle accident in Pennsylvania as a result of negligence of another Pennsylvania resident who has no liability insurance can stack the uninsured motorist benefits of an insurance policy which insures the vehicle in which the injured party is an occupant where that insurance policy is issued on vehicles

1. The order is appealable under 42 Pa.C.S.A. §§ 7320(a)(3) and 7342(a).

owned by an individual who is at all times a resident of New Jersey.

(Majority Opinion of Arbitration Panel at 4). It is undisputed that Pennsylvania law would allow such stacking whereas New Jersey law would enforce a policy provision precluding stacking. For the reasons stated herein, we affirm.

The facts may be briefly summarized: On June 9, 1981, appellant, John Caputo, Jr., while operating a vehicle in which his wife was a passenger, became involved in a motor vehicle accident in Chester County, Pennsylvania, with an uninsured vehicle owned and operated by a negligent Pennsylvania resident. Appellant and his wife are also Pennsylvania residents. Appellant was injured and his wife killed. Appellant's vehicle was owned by appellant's father, a New Jersey resident, and insured by appellee Allstate Insurance Company under a policy issued to appellant's father in New Jersey. This policy also covered three other motor vehicles owned by appellant's father. Appellant had sole use of the vehicle in question, which had been given to him by his father, although legal title or ownership was never transferred to him. On April 18, 1983, an arbitration panel, in a 2–1 decision, entered an award in appellant's favor in the amount of $15,000 in uninsured motorist benefits. The dissenting arbitrator would have given appellant $60,000, based on stacking the uninsured motorist coverages on the four vehicles owned by appellant's father and insured by appellee. On May 18, appellant filed a petition to set aside, vacate or modify the arbitration award. On July 7, the lower court denied the petition and confirmed the arbitration award, thereby prompting this appeal.

■ We must initially determine whether the common law arbitration award entered below is reviewable.

Arbitration is "designed to provide an expeditious and inexpensive method of resolving disputes with the further winning attribute of helping to ease congested court calendars...." *Allstate Insurance Co. v. Fioravanti,* 451 Pa. 108, 116, 299 A.2d 585, 589 (1973). Consequently, judicial review of an arbitration award is severely circum-

scribed. It must be so; otherwise, " 'arbitration proceedings, instead of being a quick and easy mode of obtaining justice, would be merely an unnecessary step in the course of litigation, causing delay and expense, but settling nothing finally.' " *Allstate Insurance Co. v. Fioravanti, supra,* 451 Pa. at 114 n. 4, 299 A.2d at 589 n. 4 quoting *Westinghouse Air Brake Co. Appeal,* 166 Pa.Super. 91, 97, 70 A.2d 681, 684 (1950). See also: *Bole v. Nationwide Insurance Co.,* 238 Pa.Super. 138, 141, 352 A.2d 472, 473–474 (1975), vacated on other grounds, 475 Pa. 187, 379 A.2d 1346 (1977).

\* \* \* \* \* \*

"The decision of the arbitrator in a common-law arbitration is binding and cannot be attacked unless it can be shown by clear, precise and indubitable evidence that a party was denied a hearing, or that there was fraud, misconduct, corruption or other irregularity which caused the rendition of an unjust, inequitable or unconscionable award." *Smith v. Employer's Liability Assurance Corp., Ltd.,* 217 Pa.Super. 31, 33–34, 268 A.2d 200, 201 (1970) (collecting cases). See also: *Nationwide Mutual Insurance Co. v. Barbera,* 443 Pa. 93, 95, 277 A.2d 821, 823 (1971); *Friedman v. Friedman,* 277 Pa.Super. 428, 431, 419 A.2d 1221, 1223 (1980); *Reinhart v. State Automobile Insurance Co.,* 242 Pa.Super. 18, 23, 363 A.2d 1138, 1140 (1976); *Owens v. Concord Mutual Insurance Co.,* 210 Pa.Super. 235, 239, 232 A.2d 14, 16 (1967). The arbitrators are the final judges of both law and fact, their award not being subject to reversal for a mistake of either. *Runewicz v. Keystone Insurance Co.,* 476 Pa. 456, 461, 383 A.2d 189, 191–192 (1978); *Allstate Insurance Co. v. Fioravanti, supra,* 451 Pa. at 114, 299 A.2d at 588; *Harwitz v. Selas Corp. of America,* 406 Pa. 539, 542, 178 A.2d 617, 619 (1962); *Mellon v. Travelers Insurance Co.,* 267 Pa.Super. 191, 195, 406 A.2d 759, 761 (1979).

*Cargill v. Northwestern National Insurance Co. of Milwaukee, Wisconsin,* 316 Pa.Superior Ct. 139, 142–143, 462

A.2d 833, 834–35 (1983). *See also* 42 Pa.C.S.A. § 7341. However, "courts might appropriately take jurisdiction of an appeal from an arbitration award based upon a provision of an insurance policy which was challenged as contrary to constitutional, legislative or administrative mandate or against public policy or unconscionable." *Gallagher v. Educator & Executive Insurers, Inc.*, 252 Pa.Superior Ct. 414, 418, 381 A.2d 986, 988 (1977) *(en banc), citing United Services Automobile Association Appeal*, 227 Pa.Superior Ct. 508, 323 A.2d 737 (1974). *Accord, Adelman v. State Farm Mutual Automobile Insurance Co.*, 255 Pa.Superior Ct. 116, 120 n. 2, 386 A.2d 535, 537 n. 2 (1978). Here, appellant alleges that the arbitration award violates the public policy of this Commonwealth which favors compensation of victims of uninsured motorists.[2] Thus, we find the arbitration award reviewable.

■ With regard to the issue on appeal, we recognize that Pennsylvania policy favors stacking of coverages; however, we do not believe that it is such a strong policy as to overwhelm the contacts which New Jersey has with the insurance policy in question. Under the "flexible conflicts methodology" approach to insurance contract cases which was set forth by our Supreme Court in *Griffith v. United Airlines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964), the court must apply the law of the state having the most significant contacts or relationships with the particular issue. *In Re*

2. The Pennsylvania Uninsured Motorist Act is codified at 40 P.S. § 2000(a).

> The purpose of the uninsured motorist law is to provide protection to innocent victims of irresponsible drivers. The amount of the coverage to be afforded by the uninsured motorist feature of the policy is set by the statute, but nowhere, explicitly or implicitly, does the act place a limit on the total amount a victim may recover if he suffers a loss resulting from the negligence of an uninsured motorist.

*Estate of Rosato v. Harleysville Mutual Insurance Co.*, 328 Pa.Superior Ct. 278, 282, 476 A.2d 1328, 1330 (1984), *quoting Harleysville Mutual Casualty Co. v. Blumling*, 429 Pa. 389, 395, 241 A.2d 112, 115 (1968). "The Uninsured Motorist Act allegedly ensures that innocent victims recover the damages they would have received had the uninsured tortfeasor maintained liability insurance." 328 Pa.Superior Ct. at 283, 476 A.2d at 1331.

*Estate of Agostini,* 311 Pa.Superior Ct. 233, 252, 457 A.2d 861, 871 (1983).

> When doing this, it must be remembered that a mere counting of contacts is not what is involved. The weight of a particular state's contacts must be measured on a qualitative rather than quantitative scale.... When applied to the case at bar, this means we must determine which state—Pennsylvania or Florida [here, New Jersey] —has demonstrated, by reason of its policies and their connection and relevance to the matter in dispute, a priority of interest in the application of its rule of law.

*Id.* In *Nationwide Mutual Insurance Co. v. Walter,* 290 Pa.Superior Ct. 129, 434 A.2d 164 (1981), this Court applied this interests analysis in a declaratory judgment action to determine the coverage of an automobile liability insurance policy. The policy had been issued in New Jersey to a New Jersey resident, but the accident occurred in Pennsylvania and the occupants of the car at the time of the accident were Pennsylvania residents. The insured had delivered the car to an automobile dealer in Pennsylvania so that the latter could sell the car for him. The accident occurred while the dealer and a prospective buyer were out on a demonstration ride. In holding that New Jersey law governed to invalidate a provision excluding garagemen from coverage, we reasoned:

> In this contract case, the state having the most vital contacts with the policy of insurance involved was New Jersey. The policy was issued in New Jersey by the appellant [insurance company] in June, 1972, to Mr. Walter [car owner], a resident of New Jersey. It was issued for the twofold purpose of giving insurance protection to Mr. Walter and others as set forth in the policy, and to comply with the requirements set forth in the New Jersey Motor Vehicle Security Responsibility Statute, *supra.* No matter where Mr. Fetter [dealer] drove his car or gave consent to others to operate his vehicle, he had the right to expect that his policy conformed to New Jersey

law and that the laws of New Jersey would apply in interpreting the policy. Pennsylvania had no contact with the transaction involving the insurance policy. It was by mere happenstance that the automobile was involved in an accident while located in Pennsylvania.

290 Pa.Superior Ct. at 137, 434 A.2d at 168. In *Walter*, this Court rejected the insurance company's argument that Pennsylvania had the most significant contacts because the car was located in Pennsylvania when the accident occurred, the accident occurred in Pennsylvania, and both car occupants at the time of the accident were Pennsylvania residents. We stated: "Appellant overlooks the fact that these points of contact with Pennsylvania pertained to the alleged tort involved. We are concerned with the contract of insurance and as to the insurance policy New Jersey had the most significant contacts." 290 Pa.Superior Ct. at 138, 434 A.2d at 168.[3]

■ Similarly, in the instant case, we look to the contacts which each state had with the transaction involving the insurance policy in question. The policy was issued in New Jersey to a New Jersey resident, and New Jersey law permitted insurance companies to issue a policy precluding stacking of uninsured motorist coverages. The insured vehicle, although initially in New Jersey, is now located in Pennsylvania. Pennsylvania had no contacts with the transaction involving the insurance policy. Given these circumstances, we believe that New Jersey had the most significant contacts with the insurance policy which was issued in that state to comply with its laws. Therefore, we

3. We note that *Walter* is factually distinguishable from the instant case. There, the insured vehicle was temporarily in Pennsylvania while the dealer attempted to sell it on behalf of the owner. Here, the vehicle had been given to appellant, a Pennsylvania resident, and therefore it was not "mere happenstance" that the vehicle was involved in an accident while located in Pennsylvania. However, despite these factual differences, we are bound by the *Walter* Court's application of the *Griffith* approach in focusing on each state's contacts with the insurance policy, rather than with the alleged tort.

must agree with the arbitration panel's decision that there can be no stacking of uninsured motorist coverages.[4]

Appellant argues, however, that Pennsylvania law should govern pursuant to § 110(c)(1) of the Pennsylvania No-Fault Motor Vehicle Insurance Act (No-Fault Act), which reads:

The basic loss benefits available to any victim or to any survivor of a deceased victim shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance in effect in the state of domicile of the victim on the date when the motor vehicle accident resulting in injury occurs.

40 P.S. § 1009.110(c)(1). He distinguishes *Walter* on the ground that the accident in that case occurred prior to the passage of the No-Fault Act and therefore that § 110(c) was inapplicable. We reject appellant's argument. The conflicts of law approach followed by this Court in *Walter* is still the law in this Commonwealth. Moreover, *Walter* was cited with approval in a 1983 case. *See In Re Estate of Agostini, supra* 311 Pa.Super. at 251, 457 A.2d at 870. We also note that § 110(c) is apparently aimed at protecting the rights of Pennsylvania *nonresidents* to recover basic loss benefits and to sue in tort. *See Toter v. Knight,* 278 Pa.Superior Ct. 547, 553, 420 A.2d 676, 679 (1980) ("section 110(c)(1) expresses two general rules governing the rights of a non-resident to recover basic loss benefits when the non-resident is injured in a motor vehicle accident in this State"); *DuBose v. McCoy,* 277 Pa.Superior Ct. 149, 151, 419 A.2d 705, 706 (1980) (interpretative regulations promulgated by the Pennsylvania Insurance Department on § 110(c) of the No-Fault Act provide that if a nonresident is involved in an accident in the Commonwealth, he will receive the benefits as provided under his state of domicile's no-fault plan).[5] Therefore, in the absence of a clear legisla-

---

**4.** Although we recognize that federal law apparently takes a contrary position to the one taken by this Court in *Walter, see Travelers Ins. Co. v. Davis,* 490 F.2d 536 (3d Cir.1974); *Parker v. State Farm Ins. Co.,* 543 F.Supp 806 (E.D.Pa.1982), we must follow Pennsylvania precedent.

**5.** Although this Court in *Toter* indicated that a significant or even "critical" contact in no-fault cases may be a party's domicile, that statement was premised on the assumption that the accident victim

tive pronouncement that the question of stacking uninsured motorist coverages shall always be determined under the law of the state of the victim's domicile, we will continue to follow the choice-of-law principles established at common law in this Commonwealth. *See In Re Estate of Agostini, supra; Nationwide Mutual Insurance Co. v. Walter, supra.*

Accordingly, we find that the lower court properly confirmed the arbitration award.

Affirmed.

was the person who took out the insurance policy and paid the premiums. 278 Pa.Superior Ct. at 554–55, 420 A.2d at 680–81.